UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHARLES GRANT, ET AL | CIVIL ACTION |
| VERSUS | NO: 10-805 c/w 10-872 |
| KEVIN HOUSER, ET AL | SECTION: "C" (3) |

ORDER AND REASONS

Before the Court is a Motion to Dismiss and Strike Class Allegations by defendants Kevin Houser ("Houser"), Securities America, Inc., ("SAI"), and American International Specialties Lines Insurance Co. ("AISLIC") (collectively, "Defendants"). (Rec. Doc. 51). The motion is before the Court on the briefs without oral argument. Having considered the memoranda of counsel, the record, and the applicable law, the Court GRANTS the motion in part and DENIES the motion in part for the following reasons.

I. Background

Plaintiffs Charles Grant ("Grant"), Jeremy Shockey ("Shockey"), Elizabeth Payton, and Sean Payton ("the Paytons") allege claims on behalf of themselves and a putative class for violations of the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), breach of contract, bad faith breach of contract, breach of professional and fiduciary duties, detrimental reliance, and unjust enrichment.

The dispute arises from an arrangement wherein Houser, a former professional football

player for the New Orleans Saints, allegedly promoted the sale of tax credits from Louisiana Film Studios ("LFS") to members of the Saints organization and others. Plaintiffs allege that Houser caused their funds to be delivered to LFS without Houser conducting due diligence to protect those funds from being subsequently wasted and lost. (Rec. Doc. 1 at 5-6).

Defendants move to dismiss several of the plaintiffs' claims on various grounds, and also move to strike the class allegations.

## II. Law and Analysis

### A. *Standard of Review*

Under Federal Rule of Civil Procedure 12(b)(6), the court may not dismiss a claim unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Benton v. U.S.,* 960 F.2d 19, 21 (5th Cir. 1992). *See also In re Supreme Beef Processors, Inc.,* 468 F.3d 248, 251 (5th Cir. 2006). Courts grant motions to dismiss infrequently and have wide discretion to do so, which ensures the plaintiff's right to adjudicate their claim on the merits is not wrongly denied. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1349 (3d ed. 2004). The complaint must be construed in the light most favorable to the plaintiff, accepting as true the well-pleaded material allegations and any reasonable inferences that can be made from them. *See Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982). However, before factual allegations are accepted as true, they "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft*

*v. Iqbal,* __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

  *B. Claims under the Louisiana Unfair Trade Practices and Consumer Protection Act*

  LUTPA, La. R.S. § 51:1401, *et seq*., explicitly excludes actions against "any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates or actions or transactions subject to the jurisdiction of . . . the financial institutions . . . regulators of other states." La. R.S. 51:1406(1). Defendants argue that SAI falls under these exemptions, and that therefore plaintiffs' LUTPA claims must be dismissed. (Rec. Doc. 31-1 at 5). They assert that SAI is a "national broker-dealer registered with the Financial Industry Regulatory Authority ("FINRA") and licensee of the Louisiana Office of Financial Institutions." (Rec. Doc. 31-1 at 5). Further, because at least some of the claims against Houser are as agent for SAI, to the extent an agency relationship existed, they argue that such claims are similarly precluded.

  Plaintiffs argue that the defendants have provided no proof of the exemptions listed above, and that defendants do not qualify for the exemptions. To their reply brief, Defendants attached print-outs from both the Louisiana Office of Financial Institutions ("OFI") and FINRA which they claim prove their assertions. (Rec. Docs. 51-1, 51-2). The OFI print-out indicates that its Securities Division is responsible for licensing "broker-dealers, agents, and investment advisors." (Rec. Doc. 51-1 at 2). The FINRA print-out indicates that Houser is registered as a broker with one self regulatory organization, the SAI is his employer, and that he has "approved" agent status in Louisiana. (Rec. Doc. 51-2 at 2). The print-out further indicates that SAI is a broker-dealer registered with FINRA and approved in Louisiana. (Rec. Doc. 51-2 at 3-5).

  Although in a 12(b)(6) motion the Court cannot consider matters outside the pleadings,

3

the defendants suggest that the Court can take judicial notice of the defendants' exempt status. (Rec. Doc. 51 at 2 n.2). However, it is well recognized that courts may not take judicial notice of hearsay. *See* Wright & Miller, *supra*, § 5106.4. Given the parties' dispute over Houser and SAI's status, the lack of evidence in the pleadings, and the unverified nature of the website printouts attached to the defendants' reply brief, the Court cannot at this time find in the defendants' favor on this question.

Were such information in the pleadings, it could appropriately be considered in a motion to dismiss, LUTPA's exemptions could be applied and, if Houser and SAI were found to be licensees of the OFI, the claims could be dismissed. Similarly, those claims could be dismissed on summary judgment if plaintiffs cannot show a genuine issue of material fact as to whether those defendants fall under LUTPA's exemptions. Fed. R. Civ. P. 56. At the moment, however, the defendants' request is premature.

Defendants also argue that the plaintiffs have failed to state a claim under LUTPA. LUPTA makes illegal all unfair or deceptive acts or practices in the conduct of any trade or commerce. La. R.S. § 51:1405, *et seq*. The Fifth Circuit, interpreting LUTPA, has held that to show that a defendant's actions were "unfair" under LUTPA, a plaintiff must prove that the defendant's actions "offended 'established' public policy and [that the actions] were 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994) (quoting *Monroe Medical Clinic, Inc. v. Hospital Corp. of America*, 522 So.2d 1362, 1365 (La.Ct.App.1988). Further, an action is deceptive if it contains "some element of fraud, misrepresentation, deception or other unethical conduct." *Id.*

Plaintiffs argue that their complaint demonstrates the above offenses. They argue that selling something that does not exist, as they allege the defendants did in this case, is on its face immoral, unethical, unscrupulous, and substantially injurious. (Rec. Doc. 45 at 7).

In their complaint, Plaintiffs assert that Houser "intentionally withheld from Plaintiffs his financial interest in the transactions he was promoting to them." (Rec. Doc. 1 at 6). The Plaintiffs' allegations, accepted as true for purposes of this Motion, do state a claim for unfair and unethical practices by Houser. While those allegations might ultimately be disproven, on this Motion to Dismiss, the Court looks only to the pleadings in making its decision. Based on the allegations in the Complaint, Plaintiffs have sufficiently stated a claim for violations of LUTPA and the Motions is denied as to those claims.

*Breach of Contract Claims*

Defendants argue that the Plaintiffs have failed to state a claim for breach of contract or bad faith breach of contract.

In *Hendrickson v. Meeks Disposal Co.*, 2008 WL 4657268 (E.D. La. 2008), cited in support by both parties, the court noted that "[i]n an action for breach of contract, the plaintiff must generally prove that the parties consented to be bound through offer and acceptance, LA. CIV. CODE art.1927; that the obligor failed to perform a conventional obligation, LA. CIV. CODE art.1994; and that the obligee incurred damages, *id.*" 2008 WL 4657268, at *3.

Plaintiffs allege in their complaint that Grant and Shockey provided money "to Houser and Securities America for which he was to receive . . . in state tax credits" (Rec. Doc. 1 at 3)[1] and that those funds were "wasted, converted, and dissipated by LFS and/or others." (Rec. Doc.

---

[1] In their Complaint in the consolidated action, 10cv872, the Paytons make nearly identical allegations. (Rec. Doc. 1 at 3).

1 at 6). Houser's role in the transaction is not clear, however, because "the funds were made payable to LFS." (Rec. Doc. 1 at 4). Plaintiffs nonetheless argue that their pleadings are sufficient to state a claim for contract formation including offer and acceptance. (Rec. Doc. 45 at 8).

Defendants argue that "Plaintiffs fail to offer a single fact evidencing an offer and acceptance" or a "specific contractual obligation that Houser failed to perform." (Rec. Doc. 31-1 at 7). They further allege in their reply brief that "any agreement was solely between each plaintiff and LFS, and any claim for breach of contract against [Houser and SAI] should be dismissed." (Rec. Doc. 51 at 4).

Taking the pleadings in the light most favorable to the plaintiffs, the Court holds that the plaintiffs have adequately pled a contractual breach under the pleading standards of *Twombly*. 550 U.S. at 555. Contrary to the defendants' assertions, the complaint alleges that Houser and SAI (not LFS) *received* funds directly from the plaintiffs in exchange for tax credits that were not given in return. (Rec. Doc. 1 at 3). At this early stage in the litigation, such allegations are sufficient to state a claim for breach of contract.

To prove a claim of bad faith breach of contract under Louisiana Civil Code article 1997, they must demonstrate that the defendants "intentionally and maliciously fail[ed] to perform [their] obligation[s]." La. C.C. art. 1997 cmt. b. The Louisiana courts have generally distinguished bad faith as being "conscious doing of a wrong" as opposed to "mere bad judgment or negligence." *See, e.g., MKR Services, L.L.C. v. Dean Hart Const., L.L.C.*, 16 So.3d 562, 564 (La.App. 2009); *Board of Sup'rs of Louisiana State University v. Louisiana Agr. Finance Authority*, 984 So.2d 72, 80 (La.App.2008).

Plaintiffs allege that Houser "intentionally withheld from Plaintiffs his financial interest in the transactions he was promoting to them [and] failed to disclose and intentionally withheld from them the lack of protections to preserve the purchase money." (Rec. Doc. 1 at 6). Again, the Court finds that Plaintiffs have sufficiently pled that Houser was an obligor in bad faith to withstand the instant motion to dismiss.

*Breach of Fiduciary and Professional Duty Claims*

Defendants next argue that the plaintiffs' claims for breach of fiduciary and professional duties must be dismissed.

The Louisiana Supreme Court quotes the following definition of fiduciary:

> "Fiduciary" includes a trustee under any trust, expressed, implied, resulting or constructive, executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officers of a corporation, public or private, public officer, or any other persons acting in a fiduciary capacity for any person, trust or estate.

*Scheffler v. Adams & Reese, LLP*, 950 So.2d 641, 647-48 (La. 2007) (quoting La.Rev.Stat. Ann. § 9:3801(2)). As this Court explained in a previous decision, " the definition of a fiduciary is not bound to a particular type of transaction; rather it is determined by the nature of the relationship between the parties. 'The dominant characteristic of a fiduciary relationship is the confidence reposed by one in the other and (a person) occupying such a relationship can not further his own interests and enjoy the fruits of an advantage taken of such relationship.'" *Schenck v. Living Centers-East, Inc.*, 917 F.Supp. 432, 437 (E.D. La. 1996) (quoting *Plaquemines Parish Commission Council v. Delta Development Co.*, 502 So.2d 1034, 1040 (La. 1987). "The duty of loyalty which results from the position of trust distinguishes the fiduciary relationship." *Id.* at 437-38 (quoting *Gerdes v. Estate of Cush*, 953 F.2d 201, 203 (5th Cir.1992)). The Louisiana

Supreme Court has since clarified that the "defining characteristic of a fiduciary relationship" is that the agent "undertakes to act primarily for the benefit of the principal." *Scheffler v. Adams and Reese, LLP*, 950 So.2d 641, 648 (La. 2007).

As previously mentioned, Houser's role in the alleged transactions is unclear. Although the plaintiffs claim that Houser received the funds, they acknowledge that the money was *directed* to LFS. The Complaint alleges that Houser utilized his association with the Saints organization to promote, as an agent for SAI, the sale of tax credits. (Rec. Doc. 1 at 3). The Complaint, therefore, alleges a "position of trust" and that Houser may have taken advantage of his relationship with the plaintiffs. Furthermore, by failing to disclose his own alleged financial benefit from the plaintiffs' funds, Houser purported to be acting primarily for their benefit. Defendant's motion to dismiss as to those claims is denied.

*Class Action Allegations*

Finally, Defendants move to strike the class action allegations. (Rec. Doc. 31-1 at 9).

To survive a motion to strike class allegations, plaintiffs must plead the minimum requirements of Federal Rule of Civil Procedure 23(a) and (b). *See Aguilar v. Allstate Fire and Cas. Ins. Co.*, 2007 WL 734809, at *2 (E.D. La. 2007). Rule 23(a) reads:

> Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs must also meet at least one requirement of Rule 23(b):

Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

In their complaint, Plaintiffs indicate that they are bringing their class action under "Rule 23(b)(2) and/or (b)(3)." (Rec. Doc. 1 at 8). They seek certification for an accounting under Rule 23(b)(2) and damages for breach of contract or professional and fiduciary duties under Rule 23(b)(3). (Rec. Doc. 1 at 9). However, the Fifth Circuit held in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), that class actions can only be certified under Rule 23(b)(2) if the *predominant* relief sough is injunctive or declaratory. *Id.* at 425. Monetary relief predominates unless it is incidental to related claims for injunctive or declaratory relief. *Id.* Here, it is clear from the plaintiffs' complaint that the predominant relief sought is monetary. (Rec. Doc. 1 at 10). As such, plaintiffs' class allegations under Rule 23(b)(2) must fail. The Court will proceed with its analysis only as to the Rule 23(b)(3) claims.

As an initial matter, any class claims under the LUTPA must be dismissed. LUTPA prohibits class action claims. *See Suffern v. Countrywide Home Loans, Inc.*, 2006 WL 1999204, at *2 (E.D.La. 2006). Louisiana Revised Statute 51:1409 provides in relevant part: "Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually *but not in a representative capacity* to recover actual damages." Therefore those claims must be dismissed.

Second, Defendants are correct in noting that the time for Paytons to move for class certification has passed. (Rec. Doc. 51 at 6). Eastern District of Louisiana Local Rule 23.1(B) requires that plaintiffs move for class certification "within 91 days of filing a complaint." Plaintiffs filed their complaint on March 5, 2010, and to date have not moved for certification. The Paytons' class claims are stricken.[2]

As for the remaining class claims of Grant and Shockey, discovery is ongoing. The Court has denied the motion to dismiss in its entirety, and the facts that the plaintiffs intend to use to demonstrate their claims are not before the Court. The Court holds that it is premature to determine whether Plaintiffs will be able to meet the Rule 23 requirements; the question can be properly revisited in response to a motion to certify the class.

Accordingly,

IT IS ORDERED that the Defendants' Motion to Strike Class Allegations is GRANTED as to all of the Payton plaintiffs' class claims, as to all claims brought under Federal Rule of

---

[2] Plaintiffs Grant and Shockey requested and were granted a waiver of the delay for filing a motion for class certification until discovery on that issue is complete. (Rec. Doc. 38).

Civil Procedure 23(b)(2), and as to all class claims under LUTPA.  The Motion to Strike Class Allegations is DENIED as to the remaining class claims of the Grant and Shockey plaintiffs .  IT IS FURTHER ORDERED that Defendants' Motion to Dismiss is DENIED in its entirety.  (Rec. Doc. 31).

.
New Orleans, Louisiana, this 17th day of August, 2010.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**