UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES GRANT, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-805 c/w 10-872 & 10-1919** |
| **KEVIN HOUSER, ET AL.** | **SECTION: "C" (3)** |
| | **THIS ORDER APPLIES TO CASE NO. 10-1919** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss by the defendants Kevin Houser ("Houser"), Securities America, Inc. ("SAI"), and American International Specialties Lines Insurance Co. ("AISLIC") (collectively, "Defendants"). (Rec. Doc. 127). In this portion of the litigation, Defendants' motion is directed at the Second Amended and Restated Complaint ("Complaint") of one of the plaintiffs, Mitch Berger. (Rec. Doc. 81). Plaintiff, Mitch Berger ("Berger"), opposes the Motion. (Rec. Doc. 131). The motion before the Court is on the briefs without oral argument. After reviewing the memoranda of counsel, the record, and the applicable law, Defendants' Motion to Dismiss is DENIED for the following reasons.

**I. Background**

Berger alleges claims for violations of (1) Sections 10(b) and 10b-5 of the Securities Exchange Act of 1934; (2) the Louisiana Unfair Trade and Consumer Protections Act (LUTPA), La. R.S. 51:1401, *et seq.*; (3) breach of contract; (4) breach of professional and fiduciary duties along with alleging SAI is liable for Houser's actions under the theory of respondeat superior; (5) unfair and bad faith dealings under La. C.C. art. 1997; and (6) detrimental reliance under La. C.C. art. 1967 and unjust enrichment.

1

The dispute arises from a $250,000 investment that Berger made in Louisiana Film Studios, LLC ("LFS"), at the alleged recommendation of Houser. (Rec. Doc. 81 at ¶¶ 11-12, 16). Berger and Houser were both professional football players with the New Orleans Saints. (*Id.* at ¶ 5). Houser, in addition to being a football player, was also a licensed securities broker and financial advisor beginning in 2004. (*Id.* at ¶¶ 4, 6). Subsequently, Houser served as a financial advisor to Berger since 2004 for an investment account Berger maintained at SAI. (*Id.* at ¶¶ 6-7). In late 2008, Houser recommended that Berger invest in LFS for $250,000, which Houser allegedly represented was protected and backed by Louisiana state tax credits and the land upon which LFS's studio was situated. (*Id.* at ¶¶ 12, 15). Houser also allegedly said that Berger would make 2 to 3 percent on his investment per month and that Berger would be paid back the principal of his investment within 3 to 6 months. (*Id.* at ¶ 13). Berger then delivered a $250,000 check to LFS per Houser's instructions. (*Id.* at ¶ 16). Despite this delivery, Houser did not give Berger any stock, membership units, promissory notes, receipts, or other documentation of Berger's $250,000 investment. (*Id.* at ¶¶ 18-19). However, Houser himself made a similar $100,000 investment in LFS. (*Id.* at ¶ 27).

Berger further pleads that at the time the investment was made, Houser failed to disclose that he was a creditor of LFS. (*Id.* at ¶¶ 21, 25). Houser was allegedly a partial owner of a construction company, 47 Construction, LLC, which had a multi-million dollar construction agreement with LFS to improve LFS's film studio. (*Id.* at ¶¶ 22-23). Because of this relationship, at the time Houser recommended Berger invest in LFS, LFS allegedly owed 47 Construction, LLC, hundreds of thousands of dollars. (*Id.* at ¶¶ 23-24).

Berger further contends that because the funds were not secured or monitored by Houser, and were delivered to LFS without any protections, that the funds were wasted and lost by LFS and/or others. (*Id.* at ¶¶ 26,30). Berger also alleges that Houser, in connection with the purchase and sale of securities, utilized schemes and artifices to defraud and deceive Berger. (*Id.* at ¶¶ 35-36).

## II. Law and Analysis

### A. Rule 12(b)(6) and Rule 9(b) Standard

Under Fed.R.Civ.P. 12(b)(6), a court may not dismiss a claim unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006). The complaint must be liberally construed in the light most favorable to the plaintiff, accepting as true the well-pleaded material allegations and any reasonable inferences that can be made therefrom. *See Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

As some of Berger's claims are based on allegations of fraud, the complaint must also satisfy the strict pleading requirements for fraud set forth in Fed.R.Civ.P. 9(b): "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." *See Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067–68 (5th Cir.1994).

As stated above, for claims that are based upon allegations of fraud, the heightened pleading requirement of Rule 9(b) applies. *Indiana Elec. Workers' Pension Trust Fund IBEW*,

537 F.3d at 533. Based on the Complaint, Berger's claims that are not based on the Securities Exchange Act of 1934 still sound in fraud. For example, "Houser, directly or indirectly, in connection with the purchase and sale of securities . . . employed devices, schemes and artifices to defraud . . . [and] engaged in acts, practices and courses of business which operate as fraud and deceit upon Berger." (Rec. Doc. 81 at ¶ 35). The Complaint continues that "[a]s a part of and in furtherance of his fraud and deceit, Houser[,] directly and indirectly, breached a fiduciary duty to Berger by his misrepresentations, failure [sic] to secure Berger's 'investment', [sic] and [brought about] his own unjust enrichment." (*Id.* at ¶ 36).

In an effort to curb potential abuse of federal securities law by private plaintiffs, Congress enacted the Private Securities Litigation Reform Act of 1995 (PSLRA). *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 406 (5th Cir. 2001). The PSLRA enhanced the Rule 9(b) threshold in regards to the particularity requirement for allegations pertaining to misleading statements and omissions: "[T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). The PSLRA also states that for the required state of mind, "the complaint shall . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." § 78u-4(b)(2). As the Supreme Court has explained, an "inference of scienter must be more than merely plausible or reasonable–it must cogent and a least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Particularity is required so that the complaint provides defendants with fair notice of the plaintiffs' claims,

4

protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs. *Tuchman*, 14 F.3d at 1067.

Dismissals for failure to plead fraud with particularity under either Rule 9(b) or the PSLRA are treated as dismissals for failure to state a claim under Rule 12(b)(6). *Lovelace v. Software Spectrum Inc*, 78 F.3d 1015, 1017 (5th Cir. 1996).

The Defendants aver generally that the Complaint "clearly fails to meet the heightened standard required by Rule 9(b) and the PSLRA." (Rec. Doc 127-1 at 5). This Court disagrees and finds that Berger has pled with sufficient particularity given the heightened standard of Rule 9(b) and the PSLRA as to all of his claims.

**1. Cause of Action Under Section 10(b) and Rule 10b-5 of the Securities Exchange Act**

As a threshold matter, this Court first considers if Berger's Complaint should survive a motion to dismiss where Berger has pled violations of the Securities Exchange Act of 1934 but whether or not a security is involved is unknown. Berger's Complaint pleads that the exact nature of the investment at issue is unknown because of Houser's vague remarks regarding the $250,000 investment and because no documentation whatsoever was obtained or provided for the investment. (Rec. Doc. 81 at ¶¶ 13, 18-19). Indeed, all Houser allegedly represented to Berger was that the investment was "backed" by Louisiana state tax credits and that Berger would earn two to three percent on his $250,000 investment per month with the principal paid back in three to six months (*Id.* at ¶¶ 12-13).

With these considerations in mind, this Court need not determine whether a certain

investment is a security based on what a plaintiff has stated in a complaint at this stage. If Berger wishes to couch his Complaint in claims of securities fraud, the Complaint will be put to the appropriate tests and standards of a securities fraud claim. This Court is satisfied that the Complaint is well focused and withstands the frequent concern of frivolousness in securities fraud cases. Specifically, Berger alleges that Houser acted as Berger's financial advisor for some years, managed an investment account for Berger at SAI, and Houser would recommend various investments to Berger in an advisement capacity. (*Id.* at ¶¶ 6-10). This is coupled with the Complaint's allegation that $250,000 of Berger's money went missing from an investment recommended by Houser. (*Id.* at ¶¶ 16, 26).

Next, this Court permits Berger's Complaint to proceed on the Securities Exchange Act of 1934 claim given the malleable definition of what constitutes a "security." The U.S. Supreme Court, in *Reves v. Ernst & Young*, explained that "Congress' purpose in enacting the securities laws was to regulate investments, in whatever form they are made and by whatever name they are called." 494 U.S. 56, 61 (1990). To this end, Congress enacted a broad definition of "security," sufficient "to encompass virtually any instrument that might be sold as an investment." *Id*. The Securities Exchanged Act of 1934 defines "security" to include

> any note, stock, treasury stock, security future, bond, debenture, certificate of interest or participation in any profit-sharing agreement or . . . transferable share, investment contract . . . or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10). Considering the breadth of items included in the definition of a "security," Berger should not be blocked from pleading under the Securities Exchange Act. This is particularly true where someone acting in an advisement capacity could thereby shield themselves from violations of the Securities Exchange Act by providing vague representations or as little documentation as possible regarding the transaction at issue.

This Court also finds that Berger has pled with a sufficient level of particularity with respect to the $250,000 investment to allow the Defendants to adequately respond to Berger's claims. It is clear from the Complaint that the investment at issue concerns representations Houser made to Berger in late 2008 pertaining to a $250,000 investment in LFS that related to Louisiana state tax credits, for which Berger delivered a check to Houser in the amount of $250,000 on January 1, 2009.

> Turning to a cause of action under the Securities Exchange Act, Section 10(b) prohibits
>
> any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j. The Security Exchange Commission, pursuant to this section, promulgated Rule 10b–5, which makes it unlawful

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. In an ordinary § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Affco Investments 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 192 (5th Cir. 2010) (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008)).

To establish proper causation under Section 10(b) of the Securities Exchange Act of 1934, a plaintiff must allege both transaction causation and loss causation. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Transaction causation is the reliance element in the transaction to purchase the security. *Id.* Loss causation is the "casual connection between the material misrepresentation and the loss . . . ." *Id.*; *see* 15 U.S.C. § 78u-4(b)(4) (stating that the plaintiff has "the burden of proving" that the defendant's act or omission "caused the loss for which plaintiff seeks to recover damages.").

In their Memorandum in Support of Motion to Dismiss, Defendants assert that Berger's claims are not pled with the heightened specificity required by Fed.R.Civ.P. 9(b) pertaining to securities fraud suits. (Rec. Doc. 127-1 at 4-5). Defendants argue that Berger failed to sufficiently plead under Rule 9(b) or the PSLRA that Houser acted with the requisite scienter. (*Id.* at 7-8). Defendants also contend that Berger failed to adequately plead loss causation, i.e., how any purported misrepresentation or omission by Houser actually caused Berger's loss. (*Id.* at 6). Berger contends in his Memorandum in Opposition to Motion to Dismiss that the Complaint is "very detailed" in these matters. (Rec. Doc. 131 at 6).

Here, Berger has sufficiently pled the time, place, and contents of the false representations and who made those representations. As noted above, Berger has pled with sufficient particularity to allow the Defendants to adequately respond to Berger's claims.

Berger's Complaint also properly pleads scienter. The Fifth Circuit defines scienter as an "intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (citation and quotations omitted). Here, Berger alleges that at the time the investment was made, Houser failed to disclose that he was a creditor of LFS; that Houser was allegedly a partial owner of a construction company, 47 Construction, LLC, which had a multi-million dollar construction agreement with LFS to improve LFS's film studio; and, because of this relationship, at the time Houser recommended Berger invest in LFS, LFS allegedly owed 47 Construction, LLC, hundreds of thousands of dollars. In addition, once Berger had a $250,000 check delivered to Houser, House obtained no documentation for the investment whatsoever. In line with *R2 Investments LDC v. Phillips*, this Court finds that Houser's behavior amounts to "severe recklessness in which the danger of misleading buyers . . . is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* In accordance with *Tellabs*, this is a plausible, reasonable inference, at least as compelling as opposing inferences of nonfraudulent intent, such as, for example, the investment simply failed or Houser himself was misled by LFS.

Looking at the Complaint in light most favorable to the plaintiff, with the heightened requirement of Rule 9(b) and the PSLRA in mind, this Court finds that Berger has sufficiently pled that Houser acted with the requisite scienter under the Securities Exchange Act of 1934.

Next, Berger has sufficiently pled transaction causation. The Complaint asserts that Berger relied on Houser's representations or omissions to invest in LFS and would not have done so had Berger known the truth. *See* (Rec. Doc. 81 at ¶¶ 12-16). Indeed, the Defendants concede in their Reply in Support of Motion to Dismiss that Berger "lists allegations which (if taken as true) establish, at best, transaction causation." (Rec. Doc. 134-2 at 3).

Lastly, Berger has also sufficiently pled loss causation. Berger asserts that his "funds were not secured by Houser and were delivered to LFS without any protections which resulted in the funds being wasted, converted and dissipated by LFS and/or others." (Rec. Doc. 81 at ¶ 26). The Complaint continues that "Houser failed to advise and counsel Berger [and that] Houser failed to keep abreast of an monitor the "investment" in Berger's portfolio." (*Id.* at ¶ 30). Berger further pleads that "Houser . . . failed to conduct an appropriate investigation or perform appropriate 'due diligence' of LFS or LFS tax credits, sales [sic] resulting in damages to Berger." (*Id.* at ¶ 40). Moreover, Berger contends, "[d]espite repeated demands for information and evidence of his 'investment[,]' Houser continued to represent to [Berger] that the 'investment' was 'good.'" (*Id.* at ¶ 20). Furthermore, the Complaint states "Houser guaranteed Berger that he would reimburse him in the event the investment because worthless.' (*Id.* at ¶ 27).

This Court finds that Berger's allegation that Houser's failure to disclose that 47 Construction, LLC, was in fact a creditor of LFS; that the investment was supposedly backed by Louisiana state tax credits; Houser's statements about the investment's potential performance at two or three percent per month; that Houser would reimburse Berger if the investment became worthless; and that Houser did not protect the investment all caused Berger's $250,000 to be lost or wasted are sufficient to show loss causation. Thus, Houser's repeated statements that Berger's

investment was "good" and that Houser would repay Berger in the event the investment became worthless misled–that is, caused–Berger to think that Houser would monitor, protect, and not waste Berger's $250,000 investment.

**2. Claims Under the Louisiana Unfair Trade and Practices and Consumer Protection Law**

The LUTPA, La. R.S. § 51:1401, *et seq.* excludes actions against "any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates or actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or other public utility regulatory body, the commissioner of financial institutions, the insurance commissioner, the financial institutions and insurance regulators of other states." La. R.S. § 51:1406(1).

Defendants argue that because Berger makes a claim under Section 10(b) of the Securities and Exchange Act of 1943, Berger's LUTPA claim cannot stand because LUTPA is explicitly inapplicable to SAI and Houser, who are both licensees of the Louisiana Office of Financial Institutions. (Rec. Doc. 127-1 at 3-4, n. 4). Further, Defendants assert that LUTPA does not apply to securities transactions generally, which they base on the Fifth Circuit's reasoning in *Stephenson v. Paine Webber Jackson & Curtis, Inc.*, 839 F.2d 1095 (5th Cir. 1988) that if LUTPA did apply to securities transactions, this would be an improper functional overlap with the state's Blue Sky Law. (*Id.* at 3-4). In opposition, Berger contends that because it is not clear whether the investment was indeed a security, it is too soon to dismiss the LUTPA claim on this ground. (Rec. Doc. 131 at 5).

There is no evidence in the pleadings that Houser or SAI are licensees of the Louisiana Office of Financial Institutions. Berger's Complaint alleges that Houser "is a licensed securities

11

broker/financial advisor" (Rec. Doc. 81 at ¶ 4), and that "Houser was a Registered Representative of and/or agent and/or employee of Securities America acting within the course and scope of his duties" (*Id.* at ¶ 34). Further, it is uncertain from the pleadings if the investment at issue did or did not involve a securities transaction. To this end, Berger concedes in his Opposition to Motion to Dismiss that if the investment at issue is indeed a security, then the LUTPA may not be applicable. (Rec. Doc. 131 at 6). Berger is allowed to plead in the alternative.

Taking Berger's Complaint allegations as true, Berger should be allowed to proceed with his claim under LUTPA.

### 3. Breach of Contract Claim

To state a claim for breach of contract, "the plaintiff must generally prove that the parties consented to be bound through offer and acceptance . . . that the obligor failed to perform a conventional obligation . . . and that the obligee incurred damages . . . ." *Hendrickson v. Meeks Disposal Co.*, No. 08-2744, 2008 WL 4657268, at *3 (E.D. La. Oct. 20, 2008) (citations omitted). The contract need not be in writing. *Water Craft Mgmt., L.L.C. v. Mercury Marine*, 361 F.Supp. 2d 518, 549 (M.D. La. 2004).

This Court finds that all the elements for a breach of contract claim have been sufficiently pled. Houser offered Berger an investment with a two to three percent return and any commission that Houser himself would make off the deal. Berger accepted the offer by having a $250,000 check delivered to Houser made out to LFS. The Complaint further alleges that Houser failed to obtain any return or pay Berger any commission after Berger had his check delivered to

Houser. Lastly, the Complaint alleges that the $250,000 was wasted and/or dissipated by LFS or others, which Berger sustained damages thereby. Berger has sufficiently pled a breach of contract claim and these allegations are particular enough to satisfy the heightened requirements of Rule 9(b) and the PSLRA.

**4. Breach of Professional and Fiduciary Duties Claim**; **Respondeat Superior Against SAI**

A fiduciary is defined as a "partner, agent, officer of a corporation, public or private, public officer, or any other persons acting in a fiduciary capacity for any person, trust or estate." La. Rev. Stat. Ann. § 9:3801(2). The Louisiana Supreme Court has explained that

> The dominant characteristic of a fiduciary relationship is the confidence reposed by one in the other and [a person] occupying such a relationship can not further his own interests and enjoy the fruits of an advantage taken of such a relationship. He must make a full disclosure of all material facts surrounding the transaction that might affect the decision of his principals.

*Plaquemines Parish Comm'n Council v. Delta Dev. Co.*, 502 So. 2d 1034, 1040 (La. 1987) (citation omitted). Closer to the matter before this Court, "[t]he defining characteristic of a fiduciary relationship . . . is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Scheffler v. Adams and Reese, LLP*, 950 So. 2d 641, 648 (La. 2007).

The Complaint alleges that Houser is a licensed securities broker and financial advisor working as an agent of SAI and that for some years Houser managed Berger's SAI investment account. The advisement role Houser occupied for Berger falls within a "special relationship of confidence or trust" as described in *Scheffler*. Further, in recommending investments, Houser was supposed to be acting for the primary benefit of the principal, Berger, in making a return on

13

those investments. As such, the Complaint properly alleges a cause of action for breach of professional and fiduciary duties. Indeed, there is little additional information Berger could have pled with respect to this claim and, as such, the Complaint also stands under the heightened pleading requirements of Rule 9(b) and the PSLRA.

Accordingly, this court also finds that Berger has sufficiently pled a claim for respondeat superior against SAI. For respondeat superior to exist there must be "an employer/employee relationship; . . . a negligent tort or tortious act on the part of an employee; [and] the act complained of must be committed in the course and scope of employment." *Price v. Williams*, No. Civ.A. 98-3826, 2000 WL 1168772, at *2 (E.D. La. Aug. 10, 2000); *see* La. C.C. art. 2320. The Complaint alleges that Houser managed Berger's investment account at SAI and that SAI approved of Houser's selling investments in SAI with an accompanying commission. At this stage of the litigation, these allegations make out a sufficient claim for respondeat superior.

### 5. Unfair and Bad Faith Dealings Claim

To prove a claim of bad faith breach of contract under Louisiana Civil Code article 1997, a party must demonstrate that the defendants "intentionally and maliciously fail[ed] to perform [their] obligation[s]." La. C.C. art. 1997 cmt. b. The Louisiana courts have generally distinguished bad faith as being "more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives." *MKR Services, L.L.C. v. Dean Hart Const., L.L.C.*, 16 So. 3d 562, 566 (La. Ct. App. 2009).

Here, this Court finds that Berger has sufficiently pled under the heightened 9(b) standard and PSLRA for unfair and bad faith dealings such that Houser allegedly recommended Berger

14

invest $250,000 in LFS without obtaining any documentation whatsoever when LFS was significantly indebted to a company that Houser co-owned.

### 6. Detrimental Reliance and Unjust Enrichment Claims

Detrimental reliance is such that a "party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. C.C. art. 1967. Notably, a written contract is not required for a detrimental reliance claim and the claim can be brought against oral promises. *See Dugas v. Guillory*, 719 So. 2d 719. 724-25 (La. Ct. App. 1998).

Here, the Complaint alleges that Houser promised that Berger's $250,000 investment would perform at two to three percent per month with principal repaid in three to six months. It is also alleges that Houser was making commission on the sale of the investment and that Houser would pay Berger the commission he earned on selling the investment. After these promises, Berger had a check made out to LFS delivered to Houser in the amount of $250,000. Moreover, after Berger's investment had already been made, Houser guaranteed that he would repay Berger in the event Berger's investment became worthless. Houser at least should have known that such promises and guarantees would induce Berger to rely on them. Further, it was reasonable for Berger to rely on Houser's statements because Houser had acted as Berger's financial advisor in the past. Lastly, any commission received by Houser on Berger's investment would be unjust enrichment to Houser.

Based on these allegations in the Complaint, this Court finds that Berger has made out a proper claim for detrimental reliance and unjust enrichment under the heightened pleading

standard of Rule 9(b) and the PSLRA.

### III. Conclusion

It is ORDERED that Defendants' Motion to Dismiss is DENIED.

New Orleans, this 15th day of February, 2012.

*[signature]*

District Judge Helen G. Berrigan